**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE LYONS COMPANIES, LLC | ) | Case No. 24-30684(1)(7) |
| | ) | |
| Debtor | ) | |
| | ) | |
| STEPHEN BARNES | ) | |
| (In his capacity as Chapter 7 Trustee) | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 25-03004 |
| | ) | |
| UB II (Lyons), LLC, a Delaware | ) | |
| Limited Liability Company | ) | |
| a/k/a UB II (Hannibal), LLC | ) | |
| | ) | |
| Successor by Assignment to NL Ventures | ) | |
| VI Electron, LLC, a Delaware | ) | |
| Limited Liability Company | ) | |
| | ) | |
| Defendant | ) | |

# MEMORANDUM-OPINION

This matter is before the Court on competing Motions for Summary Judgment filed by Plaintiff Stephen Barnes, (hereinafter the "Trustee") against Defendant, UB II (Lyons), LLC (hereinafter "UB II") and by UB II against the Trustee as the representative of the estate of The Lyons Companies, LLC (hereinafter the "Debtor").  For the following reasons, the Court will **DENY** the Trustee's Motion for Summary Judgment against UB II and **GRANT** UB II's Motion for Summary Judgment against the Trustee.

**INTRODUCTION**

On October 17, 2025, the Trustee and UB II filed a Joint Stipulation of Facts, which the Court incorporates, including all Exhibits thereto, herein by reference. *See* Dkt. No. 30.

On October 31, 2025, the Trustee filed a Motion for Summary Judgment against UB II, and a Memorandum in Support of the Motion for Summary Judgment.

On November 3, 2025, UB II filed a Motion for Summary Judgment against the Trustee and a Memorandum in Support of the Motion for Summary Judgement.

On November 17, 2025, UB II and the Trustee filed simultaneous Responses to the respective Motions for Summary Judgment against one another.

On November 26, 2025 and December 1, 2025, respectively, the Trustee and UB II filed their Replies to the Responses each had filed to the pending Motions for Summary Judgment.

On April 14, 2026, the Court heard oral arguments from both parties on their opposing Motions for Summary Judgment.  The matter was then taken under advisement by the Court.

**The Trustee's Claims**

Simply put, the Trustee seeks recovery of the sum of $245,059.53 held by UB II, the Debtor's Landlord, as a commercial real estate security deposit under the terms of the Lease Agreement dated October 18, 2007 (*See* Exhibit A to the Joint Stipulations of Fact, hereinafter referred to as the "Lease Agreement").  (Dkt. No. 30).  To succeed in his argument, the Trustee must defeat UB II's right to setoff the monetary defaults of the Debtor, which significantly exceed the amount held by UB II, against its asserted possessory lien on the Security Deposit.

The Trustee contends that the Lease Agreement, as amended, created a security interest held by UB II, and its predecessors (hereinafter collectively referred to as "UB II"), in the Security Deposit that required them to file a UCC-1 financing statement to perfect the lien.  The Trustee's

2

argument suggests that UB II is not entitled to claim perfection of its interest in the Security Deposit by holding it in its possession without filing a UCC-1 financing statement.  UB II never filed a financing statement regarding the Security Deposit. The Court cannot find, nor does the Trustee point to an agreement by UB II that unequivocally limits or waives its right to claim a possessory landlord's lien in the Security Deposit.

On July 18, 2017, the Debtor and Triumph Bank entered into a Loan and Security Agreement (*See* "Loan Agreement", Exhibit B to Joint Stipulations of Fact) that gave the Bank a security interest in Debtor's personal property as collateral for a loan.  Triumph perfected its lien by recording a UCC-1 financing statement.

On August 22, 2017, Triumph Bank and UB II entered into an agreement titled "Landlord Agreement."[1]  The Landlord Agreement contains UB II's agreement to subordinate certain of the rights and remedies afforded to it as a landlord against the personal property of the Debtor, the tenant, to the security interest of Triumph, for as long as Triumph or its successors and assigns held a perfected security interest in the Debtor's personal property.  UB II does not dispute the subordination of its possessory lien on the Security Deposit to Triumph under the terms of the Landlord Agreement.  However, there is no indication that UB II intended to waive any of its rights to the security interest it held.[2]  Trustee's arguments to the contrary fail to be persuasive since, as a matter of fact, UB II continues to this day to hold the Security Deposit on its books and continues to assert a possessory lien thereon.

---

[1] Curiously, Trustee's Memorandum in Support of Motion for Summary Judgment refers to the document as the August 22, 2017 Subordination Agreement, causing some confusion among the Exhibits.  *See,* Plaintiff's Motion for Summary Judgment at p.2.

[2] Interestingly, the Landlord Agreement uses the term "waiver" of certain rights afforded to UB II except that a full reading of the passages in context suggests that "waiver" is used in place of a more traditional term "forbearance".

In July of 2024, Simmons Bank, the successor to Triumph Bank, and the Debtor entered into a settlement agreement (the "Settlement Agreement"), which was approved by the Court. (*See* Exhibit I to the Joint Stipulations of Fact). As part of the Settlement Agreement, the Bank received $4.4 million and retained an unsecured claim for its substantial deficiency balance. Simmons Bank released all of the liens it previously held on Debtor's property. *See* Settlement Agreement, paragraph 4.

The Trustee argues that UB II's subordinated possessory lien on the Security Deposit was also released by Simmons Bank under the Settlement Agreement at the same time as the Simmons Bank's liens. The Trustee argues that the Landlord Agreement and Settlement Agreement gave Simmons Bank the authority to release the UB II possessory lien, thus giving the Trustee the legal right to avoid UB II's possessory lien upon the Security Deposit for the benefit of the Debtor's estate. Significantly, UB II did not sign the Settlement Agreement.

The Trustee alternatively claims that Simmons Bank transferred to the Trustee its pre-conversion superior claim to the Security Deposit, thus giving the Trustee the right to assert the priority of the Simmons Bank lien ahead of UB II. *See* p. 3, to Trustee's Motion for Summary Judgment. The Court has reviewed the Landlord Agreement and the Settlement Agreement and cannot find any clear and unequivocal grant by UB II to Simmons Bank of an ownership interest in the Landlord's lien or authority to dispose of it. All Simmons Bank had, relevant to this issue, were its loan documents, liens and the Landlord Agreement, none of which granted Simmons Bank anything greater than a subordination agreement from UB II.

In sum, the Trustee contends, that he is entitled to utilize 11 U.S.C. § 544(a) to strip and avoid the alleged unperfected lien of UB II to the Security Deposit and recover it for the Debtor's estate.

4

## **LEGAL ANALYSIS**

UB II has been in possession of the Security Deposit since September of 2016.  The Trustee claims that UB II did not perfect its lien because it did not file a UCC-1 financing statement.  Yet, UB II was not required to file a UCC-1 financing statement in order to maintain its status as perfected.  *See* UCC § 9-313(a)(1) which states that ". . . a secured party may perfect a security interest in goods, instruments, negotiable tangible documents or tangible money, by taking possession of the collateral." *See also* UCC § 9-314(a), referring to perfection of a security interest in electronic money by control of the collateral.

It is clear that UB II did not violate the automatic stay by retaining the Security Deposit despite the Trustee's demand to turnover the Security Deposit.  Section 362(b)(3) of the United States Bankruptcy Code specifically protects a creditor in this situation where it must maintain possession of the security deposit to maintain or continue the perfection of its interest in the property.

Next, Trustee contends that the Security Deposit is an "Account" as defined by KRS 355.9-102(b)(1).  This section defines an "account" as a "right to payment of a monetary obligation, whether or not earned by performance . . . (a) for property that has been or is . . . to be leased . . . (b)[f] or services rendered or to be rendered . . . (d)[f] or a secondary obligation incurred or to be incurred."  In Kentucky, an account is perfected through filing a financing statement.  KRS 355.9-312.

Pursuant to Section 9.16 of the Lease, the Debtor was required to post a Security Deposit in the amount of $245,000.00.  *See* Joint Stipulations of Fact at par. 5.  There is no evidence that UB II ever held the Security Deposit in a segregated account.  The evidence of record establishes that UB II, at the time of its purchase of the assets including the leasehold, received a settlement

statement accounting for the transfer of "Lease Adjustments" as a credit toward the purchase price. The "Lease Adjustments" identified those funds as part of the assets that UB II acquired.  *See* Exhibit 2 to Settlement Statement.

The Trustee's claim that the Security Deposit is an "account" is not persuasive.  The documents and the facts all point toward UB II holding the Security Deposit as an adjustment on the documentation of the purchase price as opposed to a separate account held or controlled by a third party.  By retaining possession from the beginning of the transaction and continuing to this day, there is no evidence or law to support the claim that UB II lost its right to claim perfection by possession.  The Trustee has failed to identify any provision in any of the relevant documents demonstrating UB II unequivocally waived its right to hold possession of, and a possessory security interest in the Security Deposit.  Absent this, UB II is entitled to claim perfection by possession of the Security Deposit under UCC § 9-313(a)(1).

The Trustee alleges that the Debtor and Simmons Bank released UB II's possessory lien to the Security Deposit by way of the Settlement Agreement.  The Settlement Agreement was approved by the Court pursuant to Fed. R. Bank. P. 9019.  Simmons Bank agreed to release its own senior lien on Debtor's collateral and vaguely attempted to release UB II's previously subordinated lien.  *See* Settlement Agreement, paragraph 4.  Such an agreement cannot alter the rights of third parties, such as UB II. It is elemental contract law that in a case with facts that exist as in the case at bar, a contract or the surrender of a contractual right must be signed by the party to be charged, which in this instance was UB II.  *See* KRS 371.010(9).  No other process, other than an adversary proceeding for a declaration of rights, would have been sufficient.  The only power Simmons had over the possessory lien of UB II was its right to a liquidation preference,

6

which disappeared upon the release of its lien.  The Trustee has not identified any documents or provisions of said documents, granting Simmons the power to release UB II's possessory lien.

Regardless of the terms of the Settlement Agreement, UB II retained a perfected, though subordinate, secured possessory lien on the collateral, until Simmons Bank released its liens.  Once Simmons released its liens on Debtor's property, the terms of the Landlord Agreement providing for subordination of UB II's lien, restored UB II's lien to its prior status as a possessory lien perfected by possession, and superior to other liens of record.  *See* UCC §§ 9-313(a)(1) and 9-314.

The Trustee contends that the strong-arm powers of 11 U.S.C. § 544(a) grant the Trustee an interest in the Security Deposit which is superior to that of UB II.  *See* Count III of Trustee's Memorandum in Support of Motion for Summary Judgment.  According to the Trustee, § 544(a)(1) of the Bankruptcy Code allows the Trustee to "step into the shoes of a judicial lien creditor and avoid any lien that is inferior to the interest held by either of those hypothetical parties."  *See* cases cited at page 20 of 24 of Trustee's Motion for Summary Judgment.

The Chapter 7 Trustee does not hold an interest in the Security Deposit superior to UB II.  From the beginning of the Lease Agreement to this day, UB II has held a perfected, possessory lien in the Security Deposit, subordinated only to the Triumph Bank's lien under the Landlord Agreement.

The Debtor then entered into the July 2024 Settlement Agreement with Simmons Bank under which the Debtor paid Simmons Bank cash "in exchange for a release of its lien on the Debtor's assets."  *See* Joint Stipulations of Fact at paragraph 18, Joint Ex. I.  Simmons Bank retained its unsecured deficiency claim as part of the July 2024 Settlement Agreement.

The Court agrees with UB II's conclusion that UB II's lien is the senior lien on the Security Deposit.  The Trustee's claim that any "remaining assets shall be carved out (after the payout to

7

Simmons Bank) for the benefit of the Debtor's bankruptcy estate free and clear of all liens which are junior to those of Simmons," is incorrect insofar as it relates to the UB II Security Deposit. *See* Joint Stipulations of Fact, Exhibit I, p. 5-6, Section 4.  It is clear that, Simmons did not have the legal right to release UB II's lien without its consent.  UB II was not a party to the July 2024 Settlement Agreement entered into by Simmons Bank and the Debtor.  There is no evidence that Simmons Bank assigned its loan documentation and/or liens to the Trustee.  Nevertheless, the Trustee, on or about September 27, 2024, demanded disgorgement of the Security Deposit.  UB II properly refused the Trustee's request.

UB II received notice of the July 2024 Settlement Agreement which it did not execute.  The Settlement Agreement does not waive UB II's possessory lien on the Security Deposit.  Any such waiver language would have to be clear and unambiguous and signed by UB II.

UB II is correct in its analysis that due process requires adequate notice that is calculated to apprise interested parties of the pending action.  Further, any party seeking to either contest or "obtain a declaratory judgment regarding the validity, priority, or extent of a lien must file an adversary proceeding against the lienholder."  *See* page 10 of 16 of UB II's Motion for Summary Judgment, citing Fed. R. Bankr. P. 7001(2), (9); *In re: Loloee*, 241 B.R. 655, 660 (B.A.P. 9th Cir. 1999) (holding that Rule 7001(2) explicitly requires an adversary proceeding to resolve a lien priority dispute).

Despite the Trustee's efforts, UB II holds a possessory lien on the Security Deposit that is superior to the claim of the Trustee and is not subject to the avoidance pursuant to 11 U.S.C. § 544 *et seq*.

## CONCLUSION

For all the above reasons, the Chapter 7 Trustee's Motion for Summary Judgment, be and hereby is, **DENIED** and UB II (Lyons), LLC's Motion for Summary Judgment, be and hereby is, **GRANTED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  June 16, 2026

9

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE LYONS COMPANIES, LLC | ) | Case No. 24-30684(1)(7) |
| | ) | |
| Debtor | ) | |
| | ) | |
| STEPHEN BARNES | ) | |
| (In His capacity as Chapter 7 Trustee) | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 25-03004 |
| | ) | |
| UB II (Lyons), LLC, a Delaware | ) | |
| Limited Liability Company | ) | |
| a/k/a UB II (Hannibal), LLC | ) | |
| | ) | |
| Successor by Assignment to NL Ventures | ) | |
| VI Electron, LLC, a Delaware | ) | |
| Limited Liability Company | ) | |
| | ) | |
| Defendant | ) | |

## <u>ORDER</u>

This matter having come before the Court on the Motion for Summary Judgment filed by Plaintiff Stephen Barnes in his capacity as the Chapter 7 Trustee against Defendant, UB II (Lyons), LLC, and the Court being duly advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Plaintiff Stephen Barnes, be and hereby is, **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment of UB II (Lyons), LLC, be and hereby is, **GRANTED**.

Joan A. Lloyd
United States Bankruptcy Judge

Dated:  June 16, 2026